NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 22-74 consolidated with CA 22-75

JOANN BROOKS, ET AL.

VERSUS

LHCG XII, LLC, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20206278
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Jonathan W. Perry, and Gary J. Ortego, Judges.

AFFIRMED.

**Randall Scott Iles**
**P. O. Box 3385**
**Lafayette, LA 70502**
**(337) 234-8800**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Joann Brooks**
**Joedy Jeoffroy**
**Joann Brooks obo James Jeoffroy (deceased)**
**Joedy Jeoffroy obo James Jeoffroy (deceased)**

**J. Ryan Pierret**
**Judice & Adley**
**P.O. Drawer 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Dr. Mitchell Dugas**
**Dr. Fernando Alemany-Lopez**

**Julie Savoy**
**Michael A. Dalman**
**Gachassin Law Firm**
**P. O. Box 80369**
**Lafayette, LA 70598-0369**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**LHCG XII, LLC d/b/a Louisiana Extended Care Hospital of Lafayette**

**EZELL, Judge.**

The issue in this case is whether summary judgment was properly granted in favor of Defendant doctors and the hospital where James Jeoffroy was treated and eventually died. The trial court ruled that Plaintiffs had no evidence of expert testimony establishing a breach of the standard of care as required to defeat a motion for summary judgment.

## FACTS

Joann Brooks and Joedy Jeoffroy filed a medical malpractice complaint with the Louisiana Patient's Compensation Fund on February 9, 2017, for the death of their father, James Jeoffroy. Plaintiffs sued Dr. Mitchell Dugas and Dr. Fernando Alemany-Lopez, internal medicine physicians practicing in Lafayette. In addition to the doctors, Plaintiffs also filed suit against Louisiana Extended Care Hospital of Lafayette (LECH), where James was being treated when he died.

Medical records introduced in support of the motions for summary judgment establish that James was an eighty-seven-year-old resident of Evangeline Oaks Nursing Home on January 30, 2016, when he was admitted to Lafayette General Hospital Southwest with a urinary tract infection. He was treated and discharged back to the nursing home but readmitted on February 14 with chronic obstructive pulmonary disease exacerbation, atrial fibrillation, and rapid ventricular response. He was again released back to the nursing home and readmitted on March 2 as hypoglycemic, hypotensive, in addition to blood cultures positive for staph epi. He also suffered with complications of acute kidney injury and anasarca.

Subsequently, James was discharged from Lafayette General Hospital Southwest and admitted to LECH for further treatment on March 10, 2016, where he was treated by Dr. Dugas and Dr Alemany-Lopez. He continued with a course

of IV antibiotics, vancomycin and Zosyn. In addition to the above-noted health issues, James also had a history of left lower extremity deep vein thrombosis, obstructive sleep apnea, induced laryngeal obstruction, severe osteoarthritis, and anticoagulated on Coumadin. James also had several wound problems that needed care. He had pitting edema on both upper and lower extremities with weeping. A stage two ulceration was located on the tip of the left great toe in addition to several wounds on the bilateral buttocks and sacral area.

Upon discharge from Lafayette General Southwest, James was noted as having dysphagia, or NPO (nothing by mouth) by speech therapy, so a nasogastric (NG) tube was inserted, and speech therapy continued upon admission to LECH. According to Dr. Deidra Barfield, who served on the medical review panel, an NG tube is supposed to drain the contents of the stomach. This NG tube was eventually removed when he no longer needed it. On March 31, 2016, a Do Not Resuscitate order (DNR) was discussed with James and the family, and a DNR was signed. On April 10, 2016, nurses attempted to place another NG tube and start an IV. James eventually died on April 10, 2016. Plaintiffs claim that the physicians failed to evaluate James's pneumonia and start life-saving antibiotics. They claim that the nursing staff was incapable of properly placing an NG tube and starting an IV. Plaintiffs argue that this conduct by the physicians and nursing staff was the proximate cause of James's death.

Plaintiffs filed a medical malpractice complaint with the Louisiana Patient's Compensation Fund on February 9, 2017. Plaintiffs' complaint named Dr. Mitchell Dugas and Dr. Fernando Alemany-Lopez as defendants in addition to LECH. The medical review panel unanimously found that none of Defendants breached the standard of care and rendered the following opinion:

2

Upon review of the records submitted on behalf of Mr. Jeoffroy, we find an 87-year-old obese man who had been hospitalized at least once a month for three months in a row. He was diagnosed with new onset atrial fibrillation and was wheelchair bound, recently requiring nursing home placement for care. He had baseline diagnoses of dementia, diabetes mellitus and COPD, oxygen dependent. The last acute care hospitalization was for left lower lobe pneumonia complicated by sepsis and he was noted to be malnourished and deconditioned with multiple (10) decubiti (bed sores) distributed all over his body, including his nose. He was also noted to have laryngeal spasm causing obstruction, a large hiatal hernia and acute on chronic kidney disease. He was moved to the Louisiana Extended Care Hospital of Lafayette from the acute care hospital and experienced recurrence of the leukocytosis (elevated white blood cell count.) The facility staff and the physicians responded to the clinical scenarios in both timely and appropriate manners consistent with the standard of care. On March 31, a "Do Not Resuscitate" agreement was reached with Mr. Jeoffroy's wife and treatment appropriate to the clinical findings was continued. April 10, Mr. Jeoffroy vomited and had a leukocytosis. Although antibiotics and an NGT were ordered, they were not successfully placed. Mr. Jeoffroy expired on April 10.

Mr. Jeoffroy appears to have been approaching the end of life as evidenced by the sequence of frequent hospitalizations, atrial fibrillation, deconditioning, malnutrition and pulmonary consequences associated with the laryngeal spasm and large, fixed hiatal hernia. Drs. Dugas and Alemany were responsive to the changing clinical scenarios as was LECH staff. Antibiotic selections were appropriate. Failure to insert the nasogastric tube did not contribute to his death. We do not find a breach in the standard of care by Dr. Dugas and Alemany or by LECH of Lafayette.

Plaintiffs filed suit for damages for wrongful death and loss of a chance of survival on December 16, 2020. Dr. Dugas and Dr. Alemany-Lopez filed motions for summary judgment on May 26, 2021. LECH filed a motion for summary judgment on June 4, 2021. Plaintiffs opposed both motions for summary judgment. A hearing was held on Dr. Dugas's and Dr. Alemany-Lopez's motions for summary judgment on August 23. 2021. The trial court ruled that there was not sufficient medical evidence to find that the appropriate standard of care had been breached and granted summary judgment. A hearing on LECH's motion for summary judgment was heard on October 18, 2021, and again the trial court

granted the motion finding that there was not sufficient medical evidence. Plaintiffs appealed both judgments.

## SUMMARY JUDGMENT

Plaintiffs argue that the trial court erred in granting the motions for summary judgment as they have identified an expert witness along with his opinion that Defendants breached the standard of care. Defendants claim that Plaintiffs have failed to provide competent expert evidence that any of them breached the standard of care in their treatment of James.

A moving party is entitled to summary judgment when it shows that there are no genuine issues of material fact and that it is "entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Summary judgment procedure is favored by law and provides a vehicle by which "the just, speedy, and inexpensive determination" of an action may be achieved. La.Code Civ.P. art. 966(A)(2).

> Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Greemon v. City of Bossier City*, 2010-2828 (La. 7/1/11), 65 So.3d 1263, 1267; *Samaha v. Rau*, 2007-1726 (La. 2/26/08), 977 So.2d 880, 882; *Allen v. State ex rel. Ernest N. Morial–New Orleans Exhibition Hall Authority*, 2002-1072 (La. 4/9/03), 842 So.2d 373, 377. In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id*. at 765–66.

> On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the

> adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *See* La. C.C.P. art. 966(D)(1); *see also Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

*Larson v. XYZ Ins. Co.*, 16-745, pp. 6-7 (La. 5/3/17), 226 So.3d 412, 416.

Pursuant to La.R.S. 9:2794, a plaintiff's burden of proof in a medical malpractice action is threefold and must be established by a preponderance of the evidence. The plaintiff must prove the applicable standard of care, a breach of the standard of care, and a causal connection between the breach and injury.

"Expert testimony is required to establish the standard of care of both the physician and hospital in a medical malpractice action, unless the negligence complained of is so obvious that a layperson can infer the negligence without the aid of expert testimony." *Baez v. Hosp. Serv. Dist. No. 3 of Allen Parish*, 16-951, pp. 5-6 (La.App. 3 Cir. 4/5/17), 216 So.3d 98, 103.

"Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a layperson can infer negligence." *Pfiffner v. Correa*, 94-924, 94-963, 94-992, p. 9 (La. 10/17/94), 643 So.2d 1228, 1233.

There is no question that expert testimony is required in this case to establish the standard of care required of the physicians and the nursing staff of LECH. On appeal, Plaintiffs rely on answers to interrogatories submitted by Dr. Dugas and Dr. Alemany-Lopez in support of their motion for summary judgment, in addition to

the position paper Plaintiffs submitted to the medical review panel and in opposition to the motion for summary judgment.[1]

> A pleading may now be filed in opposition to a motion for summary judgment. However, the *naming* of an expert in a pleading or affidavit is not sufficient to defeat a motion for summary judgment. The plaintiff must respond with specific facts based on actual knowledge that there is a genuine issue of material fact. Expert opinion testimony in the form of an affidavit or deposition testimony may be considered in support of or opposition to a motion for summary judgment. La.Code Civ.P. art. 967.

*Finley v. Lakeland Partners, LLC*, 19-913, pp. 5-6 (La.App. 3 Cir. 6/3/20), 298 So.3d 837, 841 (emphasis in original)(case citations omitted).

When utilizing testimony to support or oppose a motion for summary judgment, competent evidence is required.

> Unverified documents such as letters and reports submitted in support of or in opposition to motions for summary judgment are not self-proving and will not be considered as competent summary judgment evidence. A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether or not there remain genuine issues of material fact. Further, statements made in letters, rather than by affidavits, have no evidentiary value. To allow unverified and/or unauthenticated documents to be considered would result in "all manner of worthless documents [to] magically somehow become admissible by virtue of merely stapling them to a motion for summary judgment." Therefore, documents other than deposition excerpts and affidavits cannot be considered because they are not purported to be "[s]worn or certified copies" in compliance with La. C.C.P. art. 967.

*Thomas v. Bayonne*, 54,205, pp. 12-13 (La.App. 2 Cir. 4/13/22), 339 So.3d 71, 78 (citations omitted)(alterations in original).

The law is clear that expert testimony is necessary in a medical malpractice case to establish the standard of care, breach of that standard of care, and that the

---

[1] LECH filed a motion to strike the position paper in the trial court which was granted by the trial court. Plaintiffs also appealed that judgment in the companion case of *Joann Brooks, et al v. LHCG XII, LLC, et al*, 22-199 (La.App. 3 Cir. ___/___/___), ___ So.3d ___, in which we held that the trial court erred in granting the motion to strike.

breach caused damages. Simply identifying an expert in interrogatories is not enough. *Edwards v. Raines*, 35,284 (La.App. 2 Cir. 10/31/01), 799 So.2d 1184.

Counsel for Plaintiffs argues that the position paper is merely a verbatim recitation of what the expert reported to him and should be sufficient to defeat summary judgment. This is clearly not an expert's testimony. It is merely the attorney's work product, much like a memorandum, arguing counsel's point of the case. As noted by Justice Genovese in his dissent in *Sam v. Louisiana Racing Comm'n.*, 21-1445, p. 2 (La. 12/7/21), 328 So.3d 404, 405: "A memorandum is merely argument of counsel, presumably supported by law and jurisprudence. A memorandum has neither legal weight nor legal authority; it may or may not be filed in the record of the proceedings; and, it may, on occasion, be presented only to the court and counsel." In other words, a memorandum citing expert opinion is not of sufficient reliability to constitute testimony of the expert witness. Actual testimony of the expert doctor in the form of an affidavit or deposition or other reliable evidence, is required for summary judgment purposes. Furthermore, the expert that Plaintiffs claim support their case is not even identified in the position paper.

Plaintiffs argue that Defendants have failed to depose their identified expert. However, the burden of proof is on Plaintiffs to establish a breach of the standard of care (as in other cases). It is Plaintiffs that should have secured either an affidavit of their expert or deposition testimony of their expert to support their case. They have failed to do so since the time this case was filed with the Louisiana Patient's Compensation Fund on February 9, 2017. If Plaintiffs were able to secure an opinion from their expert doctor to utilize in constructing their position

7

paper for the medical review panel, they should have been able to secure an affidavit from that doctor.

Plaintiffs also argue that the deposition testimony of Dr. Barfield supports their position. However, we have read the excerpts of Dr. Barfield's testimony and we find that it does not. Dr. Barfield, who found in favor Defendants as a member of the medical review panel, testified that the care James received was not substandard. She further stated that the care was reasonable and appropriate given James's multiple medical problems.

Plaintiffs have clearly failed to produce reliable expert testimony as required for summary judgment purposes in support of their case. We find the trial court properly granted summary judgment in favor of Dr. Dugas, Dr. Alemany-Lopez, and LECH. The judgments of the trial court are affirmed, and costs of this appeal are assessed to Plaintiffs.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

8